### Houston et al. v. Clark et al.

1.  VENDOR AND VENDEE—*Duty of Vendee—Where Goods Ordered are of an Inferior Quality.*—The appellants, lumber dealers in Chicago, contracted with the appellees, manufacturers in Mississippi, to buy of them certain kinds of lumber at stated prices, for different grades, to be fixed

Houston v. Clark.

by the Chicago lumber inspector. Upon its arrival in Chicago, it was inspected so low, that it would not pay the freight. Instead of notifying the manufacturers of this fact, so as to enable them to take care of their lumber, the Chicago dealers sold it at a loss. *Held*, that the dealers were liable to the manufacturers for damages.

2. SAME—*When the Vendee May Refuse to Receive Goods.*—When a person orders a quantity of merchandise to be shipped him, if upon its arrival, it is not of the quality ordered, he may refuse to take it, but if he does receive it and sells it, he will be liable to the shipper.

Assumpsit, for goods sold, etc. Appeal from the Circuit Court of Cook County; the Hon. ABNER SMITH, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed January 22, 1896.

STATEMENT OF THE CASE.

This was an action of assumpsit. Appellants wrote to appellees, offering to buy lumber. In response to this, appellees shipped to appellants various cars of lumber.

The following letters and one telegram showed what afterward occurred:

"CHICAGO, June 12, 1889.

R. B. Clark & Co., Shannon, Miss.

GENTLEMEN: In reply to your favor of June 8th, we inclose you our price list, naming the kinds of lumber we are buying; also dimensions for sawing. However, we would like for you to try us with one or two cars as a sample, and if our inspection is not what you think it should be, we will ask no more. Would suggest that you saw us one car of one-inch poplar and one car of one-inch red oak. Bill it to our address, care of C., B. & Q. switch. Upon its arrival here will have it measured and inspected, and remit for it promptly, and we will take particular pains to see that you get all there is in grade and measure. We are especially needing a few cars of poplar squares, 6x6 and 8x8. Inclose you our inspection book, with the rules for grading lumber on this market, and trust that we will hear from you concerning this order soon.

Yours very truly,

GEO. T. HOUSTON & Co."

"CHICAGO, June 24, 1889.

R. B. Clark, Shannon, Miss.

DEAR SIR: Your favor of 21st at hand, stating that as soon as lumber is in shipping condition you will give us a car red oak, red gum and ash. All right, we will accept them at prices named, and should the market be better by the time you are ready to ship, will give you the benefit of it.

Yours very truly,

GEO. T. HOUSTON & Co.,

J. S. H."

"CHICAGO, Oct. 18th, '89.

R. B. Clark & Co., Shannon, Miss.

GENTLEMEN: Your favor of October 15th at hand, stating that you are loading one car of lumber. All right, we will accept it at prices named, and as soon as it arrives here will have it inspected and measured, and remit for it promptly. We name you following prices on walnut lumber, delivered on board cars here; this market's inspection: 1st and 2d grade, $72; common, $46; culls, $26. Spot cash sa soon as unloaded.

GEO. T. HOUSTON & Co."

"CHICAGO, Oct. 29, '89.

R. B. Clark & Co., Shannon, Miss.

GENTLEMEN: Your favor of Oct. the 26th at hand with number of car shipped; it has not yet arrived, but are expecting it at any time; will advise you as soon as it does. We can use a few cars one inch red gum $24, a few cars thicker than one inch at $25 per M., 1st & 2nd grade, on board cars here. Are particularly needing one car three inch 1st & 2nd grade ash; if immediate shipment can be made we offer $29 for it on board cars here, this market's inspection. Let us hear from you stating whether or not you can furnish it.

GEO. T. HOUSTON & Co."

"CHICAGO, Nov. 2, '89.

R. B. Clark & Co., Shannon, Miss.

GENTLEMEN: Your telegram of Nov. 1st at hand. Rush

the shipment on three inch ash if possible, as we have it sold to be delivered next week.

GEO. T. HOUSTON & CO."

"CHICAGO, Nov. 9, '89.

R. B. Clark & Co., Shannon, Miss.

GENTLEMEN: We have your favor of Nov. 6th, bills of lading enclosed for one car of gum and one car of ash lumber; upon arrival of same here will have them measured and inspected and remit promptly.

GEO. T. HOUSTON & CO."

"CHICAGO, Nov. 14, '89.

R. B. Clark & Co., Shannon, Miss.

GENTLEMEN: We have your favor of Nov. 10th, stating that you have shipped cars of lumber 5207, 5197, 7654; upon arrival of same here will have them measured and inspected and remit for them promptly. We have notice from railroad company of the car No. 7654, which is the first one of your last shipment.

GEO. T. HOUSTON & CO."

"CHICAGO, December 4, 1889.

R. B. Clark & Co., Shannon, Miss.

GENTLEMEN: We mail you to-day's statement with inspector's certificate and original expense bills for cars of lumber No. 2520, 60078, 60225, 5374, 1564, 1261, 60945, 7654, 5689, and as you will notice by our statement the lumber does not pay the freight by $26.25. * * *

Yours very truly,

GEO. T. HOUSTON & CO."

"Dec. 8, '89.

To G. T. Houston & Co., Chicago.

Do not dispose of our lumber. We will pay charges and take it ourselves.

R. B. CLARK & CO.,

per Hard."

"CHICAGO, December 10th, '89.

R. B. Clark & Son, Shannon, Miss.

GENTLEMEN:—Replying to your message of the 9th, we

will be unable to turn over the lumber to you, as we have not the complete shipment in stock. We very seldom pile cull gum in our yard, and in all cases, when possible, it is sold direct from the car, which was the case with a large proportion of yours. We buy lumber only on this market's inspection; each car being measured and inspected by a regular licensed city inspector; his certificate to be a final settlement.                     Yours very truly,

Geo. T. Houston & Co."

" Chicago, Dec. 12th, '89.

R. B. Clark & Co., Shannon, Miss.

Gentlemen: Replying to your favor of Dec. 8th, we would willingly turn over the lumber to you was it in our power to do so. The matter stands just like this. When the first car of gum lumber arrived, it was sold and delivered direct from the car, and just as soon as the tally sheet came to our office, we immediately wrote you not to send any more, but it appears that before you received the letter, you had shipped several more cars, which we would have held to your order, had we the yard room to do it. We are very sorry that this turned out as it did, but it certainly is no fault of ours.  *  *  *

Yours very truly,

Geo. T. Houston & Co."

" Shannon, Miss., Dec. 7, 1889.

Messrs. George T. Houston & Co., Chicago.

Gents: The mem. with R. R. rec'ts, inspector's certificates, etc., to hand. Why did you not wire us on receipt of first car of lumber rec'd by you, that the lumber would not pay freight, and that the lumber was subject to our order and permit us to pay the freight and take the lumber, and turn over to who we desired? We have wired you to hold the lumber shipped by us, which we now confirm, and now if you will turn over the lumber to us by our paying freight, etc., we will notify our attorney to that effect, and you can wire us at our expense and he will pay you freight, etc.

R. B. Clark & Co."

There was a verdict and judgment of $600 for appellees.

JOHN W. LANEHART and ELMER ALLEN KIMBALL, attorneys for appellants; CANTRELL, HAMLIN & WILLIAMS, of counsel.

DOOLITTLE, TOLMAN & POLLASKY, attorneys for appellees.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

It appears that the lumber was received and inspected from November 14th to November 23d. The first notice given to appellees of the result of the inspection, was after the property had been sold, being dated December 4th, and received December 8th. When appellants ascertained that the inspection was so low that the lumber would probably not pay the freight, they should have notified appellees by telegraph at once. Appellants knew how great a disappointment the inspection and sale must prove, and it was their duty to give appellees an opportunity to withhold their lumber from sale under circumstances they had never anticipated.

Instead of doing this, they went on and sold it in such a way that, as appellants contend, appellees are to lose the entire shipment and have, besides, to pay a portion of the freight charges.

If a great change had taken place in the lumber subsequent to its shipment, or there was an emergency requiring an immediate sale, the action of appellants would appear otherwise than it does.

The defendants contend that the lumber was not such as they ordered, and that it was bought subject to Chicago inspection.

If the lumber was not such as they ordered, appellants might have refused to take it; there was nothing in the correspondence indicating that appellees agreed to sell or appellants to buy inferior, cull lumber, at such price as such stuff might be bringing in the Chicago market.

The question of whether appellees sold the lumber subject

to Chicago inspection, and for Chicago market prices on such inspection, or appellants purchased same for what it really proved to be and was worth, was fairly presented, and the evidence was such as to warrant the verdict.

The judgment of the Circuit Court is affirmed.